IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEATRIZ BAUZA-LOPEZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 22-1948 |

**O P I N I O N**

SCOTT W. REID  DATE: December 20, 2022
UNITED STATES MAGISTRATE JUDGE

Beatriz Bauza-Lopez ("Bauza") brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be granted in part and the matter remanded to obtain a report from a consulting rheumatologist or other relevant expert on fibromyalgia.

I.  *Factual and Procedural Background*

Bauza was born on October 29, 1964. Record at 331. She completed high school. Record at 337. Bauza worked for many years as a laboratory technician, testing fabrics. *Id*. On July 31, 2019, she filed applications for DIB and SSI, alleging disability as of July, 2019, caused by chronic heart failure, fibromyalgia, chronic pain, and osteoarthritis. Record at 97, 336.

Bauza's applications were denied initially on November 8, 2019. Record at 125. On January 28, 2020, they were again denied upon reconsideration. Record at 153. Bauza then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 164. A hearing was held in this matter on May 20, 2021. Record at 41.

On July 20, 2021, the ALJ issued a written decision denying benefits. Record at 21. The Appeals Council denied Bauza's request for review on March 24, 2022, permitting the ALJ's decision to stand as the final decision of the Commissioner of Social Security. Record at 1. Bauza then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id.* The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

III. *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ found that Bauza suffered from the severe impairments of lumbar degenerative disc disease; probable degenerative changes of the cervical spine, shoulders, sternoclavicular joints, and ankles; osteoarthritis in her hands; fibromyalgia; inflammatory spondyloarthropathy; heart disease, including a history of mitral valve replacement and aortic regurgitation/aortic insufficiency; and obesity. Record at 24. She found that Bauza had medically determinable mental health impairments of anxiety and depression, but they were not severe. *Id.*

The ALJ determined that none of Bauza's impairments, and no combination of impairments met or medically equaled the severity of one of the listed impairments. Record at 25-28. She discussed the listings for disorders of the skeletal spine, lumbar spine stenosis, and abnormality of a major joint in an extremity. *Id.* She considered Bauza's inflammatory spondyloarthropathy under Listing 14.09, and also considered her symptoms of fibromyalgia

3

under Listing 14.09D, as recommended in Social Security Ruling ("SSR") 12-2p, which provides guidance on assessing fibromyalgia. Record at 27.

The ALJ determined that Bauza retained the RFC to engage in light work, except that she could never climb ladders, ropes or scaffolds, and could only occasionally stoop, kneel, crouch, crawl or climb ramps and stairs. Record at 28. She could frequently balance, but could only occasionally be exposed to unprotected heights and moving mechanical parts. *Id*. The ALJ determined that Bauza could frequently (though not constantly) handle, finger, and feel bilaterally. *Id*.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found at the fourth stage of the sequential evaluation that Bauza could perform her former work as a laboratory technician. Record at 33. She decided, therefore, that Bauza was not disabled. Record at 34.

In Bauza's Request for Review, she argues that the ALJ erred in (1) wrongly assessing her fibromyalgia; (2) concluding that she could perform the mental aspects of her past relevant work; (3) wrongly assessing her physical RFC; (4) using the incorrect standard to evaluate her symptoms; (5) failing to consider the interaction between her physical and mental impairments; (6) concluding that she received only conservative treatment for pain-related impairments; and (7) failing to take into account her consistent work history.

IV.     *Discussion*

A.      *Fibromyalgia*

As noted above, the ALJ accepted that Bauza suffered from the medically determinable impairment of fibromyalgia. Record at 24. She assessed Bauza's fibromyalgia at the third stage of the sequential evaluation under the Listing 14.09D criteria, as recommended in SSR 12-2p, but concluded that Bauza did not meet the listing. *Id*. Bauza has not disputed this.

The ALJ went on to find that Bauza's subjective description of the pain from her fibromyalgia was inconsistent with the other evidence of record. Record at 32. She relied on Bauza's relatively unremarkable imaging studies; findings of normal strength and range of motion on physical examination; and "routine and conservative" treatment. Record at 32. This, however, was inconsistent with agency rulings and case precedent which recognize that these factors, while generally relevant to a consideration of complaints of pain under SSR 16-3p, are problematic in a fibromyalgia case.

As to the normal findings on physical examination, it is recognized that "[i]n stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Higgins v. Saul*, Civ. A. No. 19-2934, 2020 WL 2539210 at ***3-4 (E.D. Pa. May 19, 2020), *citing Foyle v. Barnhart*, 432 F. Supp.2d 465, 480 (M.D. Pa. 2005), *which quotes Lisa v. Secretary of the Dep't of Health and Human Services*, 940 F.2d 40, 45 (2d Cir. 1991); *Glenn v. Colvin*, Civ. A. No. 12-3300, 2013 WL 6231263 at *5 (E.D. Pa. Nov. 26, 2013), *approved and adopted Glenn v Colvin*, 2013 WL 6681125 (E.D. Pa. Dec. 17, 2013). Other Circuits have recognized this. *Lisa*, *supra*; *Payne v. Berryhill*, Civ. A. No. 18-76, 2019 WL 1082488 at *2 (W.D. Pa. 2019), which quotes *Preston v.*

*Secretary of Health and Human Services*, 854 F.2d 815, 820 (6th Cir. 1988); *Sarchet v. Chater*, 78 F.3d 305, 306-7 (7th Cir 1996). Similarly, evidence of fibromyalgia is not necessarily apparent on imaging studies. *Henry v. Kijakazi*, Civ. A. No. 20-1294, 2022 WL 956278 at *8 (M.D. Pa. Mar. 1, 2022).

As for Bauza's treatment regimen, the ALJ called it "conservative" because it consisted of "pain medication and physical therapy." Record at 32. However, it is not clear that more aggressive treatment is available to treat fibromyalgia. For example, there is no physical manifestation or abnormality which could be surgically corrected. Bauza treated extensively with rheumatologists and a pain specialist, frequently trying new medicines. Record at 504-594, 730-743, 1281-1306; 1320-1345; 1366-1424. She participated in aquatherapy and in physical therapy, to the extent permitted by her insurance. Record at 1324, 1324. She attended psychotherapy sessions. Record at 1307-1319. In this context, "conservative" treatment cannot realistically be seen as inconsistent with Bauza's allegations regarding her symptoms.

This is not to say that every fibromyalgia diagnosis results in a finding of disability. Some cases of fibromyalgia are disabling, but most are not. *Sarchet*, *supra*, at 78 F.3d 307. Indeed, the symptoms of fibromyalgia are easy to simulate. *Id*. at 306-7. Even in a fibromyalgia case, an ALJ is permitted to reject a plaintiff's subjective representations, as long as there is a sufficient explanation provided for doing so. *Kennedy v. Saul*, Civ. A. No. 18-5258, 2019 WL 6888190 at *6 (E.D. Pa. Dec. 16, 2019).

In this case, however, the ALJ did not cite any evidence which was directly inconsistent with Bauza's claim of pain. For example, there is no evidence that she was more physically active than she alleged. Nor are there treatment notes suggesting that Bauza magnified her symptoms, as there were in *Kennedy*. 2019 WL 6888190 at *4.

Because the ALJ's assessment of the severity of Bauza's fibromyalgia symptoms was inadequate, and because there is no functional report in the record from the specialists who treated Bauza for fibromyalgia, I will direct that this matter be remanded for review of the medical record by a rheumatologist or other specialist in diagnosing and treating fibromyalgia. The specialist should opine on the likely extent of Bauza's functional capacities during the relevant period, given the existing records.

B.   *The Mental Aspects of Bauza's Past Relevant Work*

According to Bauza, the ALJ failed to comply with SSR 82-62, the agency ruling which provides guidance on determining whether a claimant can perform her past relevant work, in that she failed to decide whether Bauza could meet the intellectual requirements of her past work. As noted above, her RFC assessment did not include any intellectual or other mental limitations.

Bauza points out that on September 16, 2020, her mental health care provider diagnosed her with "major depressive disorder, severe," and an anxiety disorder. Record at 1309-10. She argues that, by definition, a major depression causes clinically significant distress or impairment, so that her RFC should have included limitations on mental functioning, citing *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 693 (7th Cir. 2016).

In *O'Connor-Spinner*, the Court of Appeals for the Seventh Circuit ruled that an ALJ could never find that a diagnosed "severe major depressive disorder" was not a severe disorder at the second stage of the sequential evaluation. *Id*. at 697. However, *O'Connor-Spinner* is not binding in this Circuit and has never been cited here.[1] On the contrary, the Court of Appeals for the Third Circuit has said that "diagnoses alone are insufficient to establish their severity" at stage two of the sequential analysis. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d

---

[1] To clarify, *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), an earlier decision involving the same parties, has been cited by District Courts in this Circuit.

7

Cir. 2007). This passage from *Salles* has been cited in this District regarding a diagnosis of depression. *Hankins v. Colvin*, Civ. A. No. 13-4929, 2015 WL 2118770 at *8 (E.D. Pa. May 6, 2015).

Further, the *O'Connor-Spinner* reasoning is not persuasive. It is based on the court's observation that the diagnosis of a "severe" depression indicates that a mental health professional found the mental disorder to cause "clinically significant distress." *Id.* at 697. However, "clinically significant distress" is not the definition of a "severe" impairment under the Social Security regulations, which are only concerned with distress which limits the claimant's ability to work: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(d)1) 416.920a(d)(1). Distress which does not cause a limitation of a work-related function is not relevant to a disability determination, even when it is clinically significant.

Here, the ALJ specifically found that Bauza had no limitations in the four broad areas of mental functioning which the disability regulations prescribe for evaluating mental disorders:

> The claimant has no limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; [or] adapting or managing oneself. The claimant's mood improved with medication and she regularly presented with normal mood and affect. Further, the evidence primarily documents intact memory skills; a calm and cooperative demeanor; normal attention; adequate grooming; and fair to good insight and judgment.

Record at 24-5, *citing* 20 CFR, Part 404, Subpart P, Appendix 1. (Internal citations omitted). She supported this statement with numerous citations to the medical records.

The ALJ then wrote: "Because the claimant's medically determinable mental impairments cause no limitations in any of the functional areas *and* the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do

8

basic work activities, they are non-severe." Record at 25, *citing* 20 CFR 404.1520(a)(d)1) 416.920a(d)(1). (Emphasis in original).

Crucially, the ALJ's citations to the record were accurate. Bauza's mental health provider described her on August 18, 2020, as calm, cooperative, fully oriented and alert, with an appropriate affect, intact memory, an average intelligence, and no thought-content or perceptual disturbances. Record at 1311. A later assessment stated that she was well-groomed and appropriate in appearance, although tearful, with fluid speech, normal thought processes, intact orientation and memory, and fair insight and judgment. Record at 1309 (December 16, 2020).

Ziba Monfared, MD, the consulting examiner for Bauza's physical impairments wrote on October 11, 2019:

> The claimant dressed appropriately, maintained good eye contact, and appeared oriented in all spheres. No evidence of hallucinations or delusions. No evidence of impaired judgment or significant memory impairment. Affect normal. The claimant denied suicidal and homicidal ideation.

Record at 598.

Other health care providers consistently made similar observations of a normal mental status. Record at 754 (September 9, 2020, cooperative with appropriate mood and affect); 802 (February 12, 2019, alert and fully oriented with an appropriate mood and affect); 875 (November 25, 2019, normal mood and affect); 961 (February 21, 2020, normal mood, affect, speech, behavior, judgment, thought content, cognition and memory); 1109 (August 28, 2020, similarly, normal mood, affect, speech, behavior, judgment, thought content, cognition and memory).

Thus, the ALJ's decision that Bauza's mental impairments were not severe within the meaning of the Social Security regulations was supported by substantial evidence. She was therefore justified in formulating an RFC assessment which did not include any mental

9

limitations. Since there were no mental limitations established, the ALJ had no reason to discuss Bauza's ability to meet the intellectual requirements of her past work. Accordingly, Bauza is not entitled to relief on this claim.

  C. *The Physical RFC*

Bauza argues that the ALJ's RFC assessment was defective because it did not include a function-by-function analysis. She cites SSR 96-8p, which states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis … . Only after that may the RFC be expressed in terms of the exertional levels of work", i.e., "sedentary, light, medium, heavy, and very heavy."

Courts in the Third Circuit, however, have said that SSR 96-8p does not require an ALJ to include in her decision an explicit function-by-function analysis. *Stacey S. v. Commissioner of Soc. Sec.*, Civ. A. No. 21-20433, 2022 WL 16834673 at \*\*6-7 (D.N.J. Nov. 8, 2022); *Brooks v. Saul*, Civ. A. No. 19-2855, 2019 WL 7048794 at \*7 (E.D. Pa. Dec. 23, 2019); *Tenorio v. Berryhill*, Civ. A. No. 16-3760, 2017 WL 4548057 at \*4 (E.D. Pa. Oct. 11, 2017); *Carrozza v. Commissioner of Soc. Sec.*, Civ. A. No. 15-4737, 2016 WL 3901010 at \*10 (E.D. Pa. Jul. 19, 2016).

The *Stacy S.*, *Brooks*, *Tenorio*, and *Carrozza* courts all rely upon *Bencivengo v. Commissioner of Soc. Sec.*, 251 F.3d 153 (table), *slip op*. available at 2000 U.S. App. LEXIS 38785 (3d Cir. Dec. 19, 2000), where a panel of the Court of Appeals for the Third Circuit wrote:

> Although a function-by-function analysis is desirable, SSR 96-80 does not require ALJs to produce such a detailed statement in writing … In his or her written opinion, the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.

*Id*. at \*\*6-7. Although *Bencivengo* is not a precedential case, it is persuasive.

10

Here, the ALJ provided a long and nuanced discussion of how the evidence supported her RFC determination. She noted that, after an October 11, 2019, physical examination, consulting examiner Dr. Monfared found Bauza to have a normal gait, and full strength and sensation in all extremities. Record at 30 (*citing* 597, 599-610). Bauza's treatment provider at Penn Medicine Pain Management also found her to have full range of motion and full strength in all joints, on September 11, 2020. Record at 31, (*citing* 1291-2). Her physician at Penn Rheumatology recommended that she be more physically active. Record at 30, (*citing* 742, 743).

The ALJ also discussed Dr. Monfared's opinion that Bauza could engage in work at the medium exertional level. Record at 33, 599-601. She noted the opinions of state agency non-examining agency physicians Louis Tedesco, M.D., and Toni Jo Parmelee, D.O., that Bauza could engage in light work, with some postural limitations. Nevertheless, the ALJ concluded that Bauza was more limited than indicated by these experts, which shows that she was not mechanistically adopting the expert opinions. Record at 31, 33. Clearly, therefore, the ALJ complied with SSR 96-8p in the manner described by the Court of Appeals for the Third Circuit in *Bencivengo*, and adopted by numerous District Courts following the *Bencivengo* decision.

It is possible that the ALJ will modify her RFC assessment on remand, after considering the new report from an expert on fibromyalgia, as discussed above. Her present decision is not, however, defective because of the absence of a function-by-function narrative.

    D.    *The Standard of Review Applied by the ALJ*

Bauza argues that the ALJ applied an incorrect standard of review to her claims. The ALJ stated that her allegations were "not entirely consistent with the medical evidence and other evidence." Record at 32. Bauza argues that this shows the ALJ erroneously failed to apply the preponderance of the evidence standard required by 20 C.F.R. §404.953(a).

11

This is a misreading. The ALJ obviously did not reject Bauza's claims *in toto* because they were inconsistent with some parts of the evidence. If she had, she would have found that Bauza had no severe impairments at all. Instead, the ALJ merely accepted in part – but not completely – Bauza's statements about her symptoms and limitations. This is consistent with the requirement in the regulations that an ALJ determine the extent to which a claimant's subjective complaints are consistent with the other evidence of record. 20 C.F.R. §§ 404.1529(a), 416.929(a).

E.    *The Interaction Between Bauza's Physical and Mental Impairments*

Bauza claims that the ALJ erred in "failing to consider the overlay" of her physical and mental impairments. However, she has not pointed to any evidence which the ALJ failed to consider. An ALJ's role is to consider and weigh all of the medical and non-medical evidence before her. *Burnett v. Commissioner of Soc. Sec.*, 220 F.3d 112, 121-122 (3d Cir. 2000). She cannot independently employ her own expertise to develop diagnoses. *Plummer v. Apfel*, 186 F.3d 422, (3d Cir. 1999). Bauza has not shown that she is entitled to relief on this claim.

F.    *Conservative Treatment for Impairments Causing Pain*

As discussed above, the undersigned concludes that the ALJ's consideration of Bauza's treatment for fibromyalgia, and fibromyalgia-related pain, was inconsistent with agency authority. This is adequately discussed above, and requires no further discussion.

G.    *Bauza's Work History*

Finally, Bauza maintains that the ALJ erred in failing to consider her consistent work for a single employer for fourteen years prior to her asserted disability date. Oddly, she argues that the ALJ "was obligated to explain how he [*sic*] considered" her work history, while at the same time acknowledging that an ALJ is not statutorily required to consider a claimant's work history. Record at 16. *Plaintiff's Motion* at 16.

In fact, courts in this Circuit have found influential the non-precedential holding in *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 176-7 (3d Cir. 2015), where the Court of Appeals for the Third Circuit upheld an ALJ's decision that did not mention a claimant's "unblemished work history," because "the ALJ did explain why she found that [his] subjective reports ... were belied by other evidence of record." *Cesar F.R. v. Comm'r Soc. Sec.*, Civ. A. No. 21-10590, 2022 WL 4300152 at \*\*4-5 (D.N.J. Sep. 19, 2022); *Salazar v. Colvin* Civ. A. No. 12-6170, 2014 WL 6633217 at \*7 (E.D. Pa. Nov. 24, 2014) ("The fact alone that a claimant has a long work history does not require a remand, particularly when the medical evidence does not support a claimant's testimony on the extent of her limitations").

Again, I note that the ALJ may revise her view of Bauza's subjective claims on remand, in accordance with the new report from an expert in fibromyalgia. However, the mere failure to mention Bauza's work history does not render her decision inadequate.

V.   *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be GRANTED IN PART, and the matter remanded to obtain a report from a consulting rheumatologist or other relevant expert to consider Bauza's fibromyalgia.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE